**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **CYRUS ANDREW SULLIVAN,** | **Case No. 3:18-cv-00110-JGZ** |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

Plaintiff Cyrus Sullivan brought this action against the United States under the Federal Torts Claims Act (FTCA), 28 U.S.C. § 1346(b), asserting corrections officials used excessive force against him in July 2015 when he was a federal inmate at the United States Penitentiary in Victorville, California (USP-Victorville). Pending before the Court is the United States' Motion for Summary Judgment on all claims. (Doc. 44.) The motion has been fully briefed. (Docs. 53, 54.) Because the Court concludes that disputed issues of material fact exist as to Sullivan's claims, the Court will deny the Motion.

**I.    Background**

On July 29, 2015, Cyrus Sullivan was housed in the Special Housing Unit (SHU) of USP-Victorville when correctional officers searched Sullivan's cell. (Doc. 2, p. 8; Doc. 44, ¶¶ 2, 8-9.)[1] During the search, officers found pens and confiscated them. (Doc. 2, p. 8; Doc. 44, ¶ 10.) Sullivan objected to the seizure of the pens because he was using them to draft motions in an unrelated case.

---

[1] The Court obtained many of the background statements from Sullivan's verified complaint. (Doc. 2.) *See Silverman v. Mendiburu*, 785 Fed. App'x 460 (Nov. 22, 2019) (mem. decision) (applying principle that verified complaint and opposition papers are competent evidence to be considered in ruling on defendants' motion for summary judgment).

Sullivan admits that the pens were prohibited, but claims they had never been a problem before.  (Doc. 2, p. 8; Doc. 44, ¶¶ 10, 12-13.)

After the search was complete, Sullivan continued to object to the seizure of his pens, and he refused to go back in his cell when directed to do so by Officer Luna. (Doc. 2, p. 8; Doc. 44, ¶¶ 12-13.)  According to Sullivan, Officer Luna then twisted his wrists, which had been handcuffed behind his back prior to the search; Sullivan responded with a yelp and elbowed Officer Luna in the chest.[2] (Doc. 2, p. 8; Doc. 44, ¶ 13.)   Sullivan alleges that Officer Luna responded by calling him a "piece of sh**", shoving him down the hall a way, and taking him to the ground before Officers Oeltjenburns and Olmos piled on top of him. (Doc. 2, p. 9.)  Sullivan contends that his take down may have been justified,[3] but then Officer Luna punched him in the head repeatedly, and Officers Oeltjenburns and Olmos may have joined in.  (*Id.*) Sullivan stated that he kept apologizing for his prior conduct and begging them to stop but they yelled "stop resisting" and Officer Luna continued to hit him. (Doc. 2, p. 9; Doc. 44, ¶¶ 15-16.)  Eventually Lt. Williams arrived on the Range and encouraged the officers to continue by his comments.  (Doc. 2, p. 9.)

According to Sullivan, after the officers gained control of him, they escorted him to an observation room on the lower level where they removed his jumper and placed him in ambulatory restraints. (Doc. 2, p. 10; Doc. 44, ¶ 19.) Lt. Williams and Officers Oeltjenburns, Luna and Olmos threw him face down on a concrete slab, ripped off his jumpsuit and began torturing him.  (Doc. 2, p. 10.)   Sullivan asserts that Officer Oeltjenburns twisted his knee and ankle up against his back and buttocks while Officer Olmos yelled "break it." (Doc. 2, p. 10.) This hurt so badly the he thought his ankle was going to break. (*Id.*)  He also alleges that the restraints were applied "bone tight" to his hands and legs. (*Id.*)  Sullivan states Lt. Williams told him to stand up, but he fell back into a seated position on the slab due to the pain of the shackles; Lt. Williams then punched him in the face and said, "I told you to stand." (*Id.*)   Sullivan states that the officers left him for the next shift to find and he spent at least thirty minutes in agonizing pain as he lost feeling in his limbs. (*Id.*)

---

[2] Other officers stated that Sullivan elbowed Officer Luna in the face. (Doc. 44, ¶ 14.)

[3] Sullivan admits that officers had the right to use reasonable force to take control of him after he elbowed Officer Luna, but contends that officers overreacted after that point. (Doc. 2, p. 9; Doc. 44, ¶ 13.)

The Government asserts that no BOP staff punched, beat or tortured Sullivan when he was on the ground in the SPU or in the observation cell. (Doc. 44, ¶ 20; pp. 22-24.) The Government points to video from two security cameras which were focused on the SHU hallway. (Doc. 44, ¶ 9.) The government states that, at 12:31:30, the video shows Officer Luna taking control of Sullivan's right elbow with his right hand and placing his left hand on Sullivan's right wrist. (*Id*. ¶ 15.) By 12:31:40, staff are able to get Sullivan to the ground. (*Id*. ¶ 14.) By 12:32:44, all staff are back on their feet and Officers Garibay and Oeltjenburns are lifting Sullivan to his feet. (*Id*. ¶ 17.) The government states that the video does not show Officer Luna's arms, nor any other staff member's arms, moving in a back and forth motion as would be expected if they were punching or beating someone. (*Id*. ¶ 18.) Review of the video shows five officers piled on top of Sullivan to gain control of him. (Doc. 44, ¶ 16; Exhibit E-1.) Sullivan suffered a cut to the head, and alleges the cut was caused by the officers punching him. (Doc. 2, p. 9; Doc. 44, ¶ 26.)

The Government states that staff escorted Sullivan from the upper level to the lower level and into the observation cell where they removed his jumper and placed him in ambulatory restraints. (Doc. 44, ¶ 19.) According to the Government, while no camera captured the actions of the staff and Sullivan in the observation cell, video and written staff accounts show that the force used in placing Sullivan in ambulatory restrains was reasonable, and also in accordance with prison policy. (Doc. 44, p. 20.)

A video debriefing and medical assessment was started at approximately 1:41 p.m. and concluded at approximately 2:04 p.m. (Doc. 44, ¶ 21.) When Officer Alvarez went to escort Sullivan for the medical assessment, he found him standing inside the observation room by the door. (*Id*. ¶ 22.) Sullivan alleges that because the restraints were so tight, it took him at least six minutes to walk to the medical unit, which usually takes thirty seconds. (Doc. 2, p. 10.) The parties agree that Sullivan was examined at the medical unit and the restraints on his wrists and ankles were loosened during the medical assessment. (Doc. 2, p. 10; Doc. 44, ¶ 24.) Medical staff observed a "minor laceration scalp"; "Abrasions: Back, Neck, Face, Behind both ears"; and "Swelling both ears with left greater than the right." (Doc. 2, p. 10; Doc. 44, ¶¶ 25-26.)

Sullivan received an incident report that charged him with "Assaulting Any Person" on July 29, 2015. (Doc. 44, ¶ 28.) At a disciplinary hearing, the Disciplinary Hearing Officer found that Sullivan committed the act of "Assaulting any Person."  (Doc. 2, p. 11; Doc. 44, ¶¶ 28-29.) Sullivan was sanctioned with (1) 20 days of good time disallowed, (2) four months immediate family only visiting privilege, and (3) four months MP3 player restriction. (Doc. 44, ¶ 29.)  Sullivan appealed through the administrative remedy process, but the finding was sustained and not expunged. (Doc. 2, pp. 11-12; Doc. 44, ¶ 30.)

## II.    Summary Judgment Standard

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). The Court accepts as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Eisenberg*, 815 F.2d at 1289. Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322; *see also* Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Where the nonmoving party bears the burden of proof, the burden of the moving party may be discharged by showing that there is an absence of evidence supporting its opponent's claim. *Id.*; *see also* Fed. R. Civ. P. 56(c).

## III.    Discussion

## A.    Applicable Law

Under the FTCA, the United States waives its sovereign immunity for claims of money damages for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in

accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1). This includes a waiver of sovereign immunity for certain intentional torts committed by law enforcement officers, including assault and battery. *Millbrook v. United States*, 569 U.S. 50, 54-55 (2013). In this case, it is undisputed that the FTCA and California law apply to Sullivan's claims of assault and battery.

"Under California civil law, a claim for assault must allege: '(1) that Defendants intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that Plaintiff was put in imminent apprehension of such contact.'" *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 747 (E.D. Cal. 2008). "To prevail on a claim of battery under California Law, a plaintiff must establish that: (1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching." *Avina v. United States*, 681 F.3d 1127, 1130-31 (9th Cir. 2012). "Harmful or offensive contact, intentionally done, is the essence of battery, while apprehension of that contact is the basis of assault." *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (discussing California law) (citation omitted).

However, because officers are allowed to use reasonable force, a plaintiff must allege unreasonable force as an element of the torts alleged against an officer. *Edson v. City of Anaheim*, 74 Cal. Rptr. 2d 614, 615-16 (Cal. Dist. Ct. App. 1998); *Avina*, 681 F.3d at 1131 (to bring claims of assault and battery under California law plaintiff must show excessive force); *Saman v. Robbins*, 173 F.3d 1150, 1156-57 (9th Cir. 1999) (applying the same excessive force standard to both § 1983 and California tort claims). In the prison context, the use of unreasonable force or excessive force is analyzed under the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010) (analyzing a claim of excessive force by a prison guard under the Eight Amendment).  Under the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not "every malevolent touch by a prison guard gives rise" to an excessive force claim. *Id.* "[T]he reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. Cnty. of Riverside*,

120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit Court of Appeals has] held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Avina*, 681 F.3d at 1130.

## B.    Analysis

The Government seeks summary judgment on Sullivan's FTCA claims of assault and battery on three different bases. The Government asserts that (1) the record, including video evidence, clearly contradicts Sullivan's allegations of assault and battery; (2) Sullivan's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (3) the United States has not waived its sovereign immunity to permit suits for constitutional claims. The Court will address each argument in turn.

## 1.    Video Evidence and Staff Affidavits do not Blatantly Contradict Sullivan's Claims

The Government asserts that summary judgment is appropriate on Sullivan's claims because no reasonable jury could return a verdict in his favor. The Government argues that video evidence and staff accounts demonstrate that the force used on Sullivan outside of his cell was reasonable and in direct response to his battery of Officer Luna. (Doc. 44, p. 19.) The Government further argues that video and written staff accounts demonstrate that the force used placing Sullivan in ambulatory restraints was reasonable and in direct response to his battery of a law enforcement officer, and that the use of ambulatory restraints was appropriate given the facts. (*Id*. at pp. 19-21.) Finally, the Government asserts that Sullivan alleges no injury arising from the application of ambulatory restraints. (*Id*. at p. 19.) The Government relies on *Scott v. Harris*, 550 U.S. 372, 380 (2007). In that case, the Supreme Court held, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable juror could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380 (noting that a videotape clearly contradicted the story told by the opposing party).

The Court concludes that the video evidence does not blatantly contradict Sullivan's verified allegations as to the amount of force used and whether Sullivan suffered unnecessary pain as a result of its use. In his verified complaint, Sullivan alleges injuries "as a result of assault and battery by" the correctional officers and alleges that while the officers repeatedly punched him in the head, he

"begg[ed] them to stop." He alleges that he suffered a cut to the top of his head and that Officer Luna continued to hit him. Sullivan further alleges that Lt. Williams encouraged the officers to punch him. Similarly, with respect to the use of force applied in the observation room, in his verified complaint, Sullivan alleges that Officer Oeltjenburns twisted his knee and ankle up against his back while Officer Olmos yelled "break it" for several minutes. According to Sullivan, "it hurt so bad [he] thought [his] ankle was going to break." Sullivan's verified allegations, if believed by a jury, constitute evidence of assault and battery and use of force beyond what would be required under the circumstances.

The truthfulness of Sullivan's declarations cannot be ascertained by review of video evidence. The videos do not clearly depict what occurred in the hallway outside of Sullivan's cell or in the observation room. The first video shows little of what occurred outside of Sullivan's cell. (Ex. E-1 & E-2, Cam. 193.) A second video, from a camera positioned at the far end of the hall away from Sullivan's cell, does not provide a clear view of what each officer is doing during the take down. (Ex. E-1 & E-2, Cam. 189.) At relevant times it is difficult to ascertain what is happening or whether hands are going up and down to strike Sullivan, because the officers are moving rapidly, their bodies block the view of actions by other officers, and the number of officers on top of and congregated around Sullivan. (E-1 & E-2, Cam. 189.) The last video shows the area outside of the observation room, but does show much of what is occurring in the room. [4] (E-1 & E-2, Cam. 367.) Additionally, much of that view is blocked when officers place a privacy screen across the entrance to the room. The Government acknowledges that "no camera captured the actions of the staff and inmate in the observation cell." (Doc. 44, p. 20.)

The Government also points to the declarations of the officers stating that they did not commit the acts alleged by Sullivan in his affidavit. Although Sullivan's allegations are directly contradicted by testimony of the involved officers, whether the jury will believe Sullivan or the officers is not a question properly determined by the Court on a motion for summary judgment. "The court must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is

---

[4] However, the Court does find that Sullivan's allegation that officers "threw [him] face down on the concrete slab" in the observation room is clearly contradicted by the record. (Doc. 2, p.10.) The video evidence clearly shows that Sullivan kneeled on the concrete slab with the officers holding his wrists and arms; no officer throws Sullivan down. (Ex. E-1 & E-2, Cam. 367, 12:41:42.) Sullivan is precluded from seeking damages for allegedly throwing him on the concrete slab.

a genuine issue for trial." *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

Finally, the Government asserts that its use of ambulatory restraints was appropriate in accordance with prison policy, Sullivan was able to stand despite him alleging that he could not,[5] and medical staff did not note any injuries to Sullivan's wrists or ankles.  These arguments are not persuasive in light of the applicable law.

As noted above, Sullivan alleges sufficient proof of his claim as it pertains to the application of ambulatory restraints. Sullivan does not allege that the mere use of ambulatory restraints constitutes battery. Rather, Sullivan alleges that the officers used excessive force in applying the restraints with malicious intent.  Sullivan alleges that as the officers applied the restraints, the officers twisted his knee and ankle to the point that he thought his ankle was going to break, that he was in "agonizing pain as [he] lost feeling in [his] limbs," that he had "excruciating pain" when he walked, and that his "hands and feet turned purple."  In addition, although medical staff did not observe any injuries to Sullivan's wrists or ankles, Sullivan alleges that when he touches his wrist he gets "a weird, sometimes painful, shooting sensation," that the restraints reaggravated an old shoulder injury causing limited range of motion.  Importantly, under the applicable law, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38 (2010).

Because there is a genuine issue of fact as to whether the officers' actions constituted assault and battery, the Government's argument for summary judgment as to the sufficiency of the evidence will be denied.

## 2. *Heck v. Humphrey* and Its Progeny Do Not Bar Sullivan's Claims

The Government asserts that *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny bar Sullivan's claims for assault and battery "to the extent they are related to the matters determined in the prison disciplinary proceeding which has not been overturned."  (Doc. 44, p. 17.)  Because the Discipline Hearing Officer found Sullivan committed the prohibited act of assaulting any person, the

---

[5] Of note, the Government asserts that video evidence and staff testimony refute Sullivan's suggestion that he couldn't stand after being placed in ambulatory restraints.  Sullivan's allegation, however, was that he "could not stand without excruciating pain." (Doc. 44, p. 22.)

Government argues that summary judgment should be granted for the United States.  The Court disagrees.

In *Heck*, the Supreme Court held that a prisoner's 42 U.S.C. § 1983 claim is not cognizable if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487.  The holding in *Heck* applies to disciplinary judgments in prison, *Edwards v. Balisok*, 520 U.S. 641 (1997), and to FTCA claims, *Erlin v. United States*, 364 F.3d 1127 (9th Cir. 2004).  However, "[i]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit." *Heck,* 512 U.S. at 487 (emphasis in original).

In this action, Sullivan's claims would not necessarily imply the invalidity of the disciplinary finding that he assaulted Officer Luna, a finding which Sullivan does not challenge.   Sullivan admits that he wrongfully assaulted Officer Luna on July 29, 2015.   Sullivan asserts claims for assault and battery based on allegations that officers used excessive force, without justification, after he had been restrained.   Sullivan's claims are similar to those permitted to proceed in S*mithart v. Towery*, 79 F.3d 951, 952-53 (9th Cir. 1996).  There, Plaintiff Smithart brought a civil rights action, asserting claims for arrest without probable cause, unfounded prosecution, and excessive force applied during his arrest.  Smithart had pled guilty to charge of assault with a deadly weapon based on his driving his pickup truck at officers who had made a traffic stop of Smithart's son on Smithart's property.  *Id*. at 952. Smithart alleged that after he exited his vehicle, officers provoked him into a confrontation which they escalated beyond any necessary measure, resulting in injuries to Smithart including broken legs, a broken arm, and internal injuries.  *Id.*  The Ninth Circuit Court of Appeals held that *Heck* barred the claims for arrest without probable cause and unfounded prosecution, but found that *Heck* did not preclude Smithart's excessive force claim because a successful section 1983 action for excessive force would not necessarily imply the invalidity of Smithart's arrest or conviction for assault.  *Id.* at 952-53.  Sullivan's California law claims for assault and battery are essentially identical to Smithart's § 1983 claim for excessive force to the extent that the claims are evaluated utilizing the same liability standard. *See Saman*, 173 F.3d at 1156-57 (applying the same excessive force standard to both § 1983 and

California tort claims); *Munoz v. City of Union City*, 16 Cal. Rptr. 3d 521, 539 ("A peace officer who uses unreasonable or excessive force in making a lawful arrest or detention commits a battery upon the person being arrested or detained as to such excessive force." (citation omitted)). And, like *Smithart*, Sullivan's claims would not necessarily imply the invalidity of the disciplinary determination that he assaulted Officer Luna in the first instance.[6] Accordingly, the Court concludes that *Heck* does not bar Sullivan's claims for assault and battery.

### 3.    Constitutional Tort Claim

The Government asserts that Sullivan's claim for "excessive force by assault and battery" in violation of the Eight Amendment must be dismissed because the United States has not waived its sovereign immunity for claims alleging a violation of the constitution. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994) (the FTCA waives the United States' immunity as to certain torts under a state's common law but does not waive immunity as to constitutional torts claims); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (waiver of sovereign immunity is a prerequisite to jurisdiction). Sullivan's complaint does not appear to assert a constitutional tort claim. The complaint references only the FTCA, and both the complaint and Sullivan's response to the motion for summary judgment reference the standard for excessive force as the standard to be applied to evaluate his claims of assault and battery against law enforcement officials. The government itself notes that the elements of civil battery and assault under California law require that Sullivan prove unreasonable force was used against him. (Doc. 44, pp. 18-19.)  Because the complaint does not contain an Eighth Amendment claim, the Court will deny as moot the request for summary judgment as to the Eighth Amendment claim.

/

/

/

/

/

/

---

[6] Although Sullivan initially administratively challenged the disciplinary process and the finding that he assaulted Officer Luna, he no longer challenges either.

**IV.     Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 44) is **DENIED**.

Dated this 30th day of November, 2020.

_____
Honorable Jennifer G. Zipps
United States District Judge